**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIRECTV, INC.,** : | |
| : | |
| **Plaintiff** : | |
| : | **3:03-CV-0072** |
| **v.** : | |
| : | **(Chief Judge Vanaskie)** |
| **WILLIAM WALSH,** : | |
| : | |
| **Defendant** : | |

## MEMORANDUM

At issue in the above-captioned action is whether Plaintiff DIRECTV, Inc. has established by a preponderance of the evidence that Defendant William Walsh unlawfully intercepted DIRECTV's encrypted satellite television signal in violation of 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a), and/or 18 Pa. Cons. Stat. Ann. § 910(a). Although DIRECTV did not adduce direct evidence of unauthorized interception of its signal, the circumstantial evidence of such wrongful conduct is sufficient to warrant judgment in its favor. Specifically, the fact that Mr. Walsh purchased a device that is used primarily to cause unlawful interception of DIRECTV's satellite signal, Mr. Walsh was a DIRECTV subscriber who reduced the level of purchases of satellite television programming, and Mr. Walsh discarded the device in question after receipt of correspondence from DIRECTV indicating its belief that he had gained unauthorized access to its satellite programming, coupled with the absence of any explanation for Mr. Walsh's acquisition of the device, combine to compel the conclusion that it is more likely

than not that Mr. Walsh wrongfully intercepted DIRECTV satellite television programming. Because DIRECTV has shown possession of only one interception device for a brief period of time, and DIRECTV has not shown the level of actual damages sustained by the unlawful interception of its signal, damages will be limited to the minimum liquidated statutory damage amount of $1,000 authorized under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, and the minimum statutory liquidated damages of $250 permitted by the Pennsylvania anti-piracy statute, 18 Pa. Cons. Stat. Ann. § 910.  Discretion will be exercised to not award damages under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, <u>et seq.</u>  In addition to statutory damages, DIRECTV will be awarded counsel fees and the costs of this litigation.

## I. **BACKGROUND**

### A. **Procedural History**

DIRECTV brought this action on January 13, 2003, asserting jurisdiction for its federal statutory claims under 28 U.S.C. § 1331 and supplemental jurisdiction for its Pennsylvania statutory claim under 28 U.S.C. § 1367.  DIRECTV alleged that Mr. Walsh and three other individuals separately "purchased and used illegal pirate access devices that are designed to permit viewing of DIRECTV television programming without authorization by, or payment to,

DIRECTV."  (Complaint, ¶ 6.)[1]

On April 15, 2003, following the entry of default against him, defendant Walsh, represented by counsel, answered the complaint.  By Order dated April 21, 2003, the Hon. A. Richard Caputo, to whom this matter had been assigned, denied as moot DIRECTV's Motion for Default Judgment.

The matter then proceeded to discovery.  Following a telephonic discovery conference, Judge Caputo, by Order entered on July 9, 2003, directed Walsh to respond to outstanding discovery requests by July 11, 2003.  (Dkt. Entry 23.)  Walsh failed to comply with the court Order, and DIRECTV moved for sanctions.  By Order dated August 20, 2003, Walsh was directed to respond to Plaintiff's First Set of Requests for Production of Documents and Requests for Inspection of Items by September 2, 2003.  (Dkt. Entry 33.)  In addition, Judge Caputo directed that Walsh pay counsel fees to Plaintiff in the amount of $150.  (Id.)

Walsh persisted in his failure to comply with court-ordered discovery, and DIRECTV filed a Motion for Contempt of Court.  By Order dated November 4, 2003, Judge Caputo found Walsh and the attorney who represented him at that time, Robert A. Kurtz, Esq., in contempt for failure to obey the Orders of July 9 and August 20, 2003.  (Dkt. Entry 45.)  As a sanction, Judge Caputo barred Walsh from opposing Plaintiff's claims, and assessed additional counsel

---

[1] The claims against the other three defendants have been resolved; Mr. Walsh is the only remaining defendant in this litigation.

fees against Walsh and Attorney Kurtz in the amount of $150.[2]

On December 11, 2003, DIRECTV, based upon Judge Caputo's Order barring Walsh from opposing DIRECTV's claims, moved for judgment on the pleadings. DIRECTV sought statutory damages of $10,000, the counsel fees of $300 assessed pursuant to Judge Caputo's Orders, and the costs for filing and serving the complaint in the amount of $274.76, for a total award of $10,574.76. (Dkt. Entry 46 at p. 4.) Walsh, through Attorney Watkins, opposed the motion, arguing that Judge Caputo's sanction did not relieve DIRECTV of the burden of proving its claims that Walsh had wrongfully intercepted DIRECTV's programming signal. By Order dated February 20, 2004, Judge Caputo summarily denied DIRECTV's motion. (Dkt. Entry 50.)

By Order dated May 12, 2004, Judge Caputo recused himself from this case, and it was re-assigned to the undersigned Judge. A non-jury trial was conducted on August 30, 2004.

**B. Findings of Fact**

### The Parties

1. Defendant William Walsh resides at R.R. 2, Barnesville, Schuylkill County, Pennsylvania, 18214.

2. DIRECTV is a California corporation doing business throughout the United States as a distributor of satellite television programming. DIRECTV provides interstate direct broadcast

---

[2] On November 3, 2003, Attorney Kent D. Watkins entered his appearance for Mr. Walsh. Attorney Watkins continues to represent Mr. Walsh.

4

satellite signals to satellite dish owners who pay for the signal and obtain a license to use the service, and DIRECTV has an interest in those broadcasts.  DIRECTV offers programs on both a subscription and pay-per-view basis, and it encrypts, meaning it digitally scrambles, its satellite broadcast to protect against unauthorized access.

     3.  A typical DIRECTV system consists of a small DIRECTV-compatible satellite dish, a receiver, (also known as an "integrated receiver/decoder or "IRD"), and a DIRECTV access card, which resembles a credit card but also contains an imbedded computer and memory.  The DIRECTV access card, when inserted into the receiver, allows the receiver to decrypt the various channels or services that the subscriber has purchased.

     4.  Walsh purchased a DIRECTV system, including a satellite dish, receivers, access cards and related equipment necessary to receive DIRECTV programming as a subscriber of DIRECTV.  On or about September 8, 1998, Walsh activated an account with DIRECTV, No. 0005379344.

     5.  Prior to January of 2000, Walsh, as a DIRECTV subscriber, averaged approximately two pay-per-view selections per month.  He discontinued the service, while retaining the access cards and other equipment necessary to access the DIRECTV signal, from January of 2000 until April of 2000.  He resumed his subscription in April of 2000, but at a reduced programming level.  Walsh did not purchase any pay-per-view programming after December of 1999.

### Signal Piracy

6.  Devices have been developed to circumvent the necessity for a valid access card, allowing users to obtain the DIRECTV satellite signal and DIRECTV programming without paying for it.  These pirate access devices are available for purchase via internet web sites.  The devices can modify a DIRECTV access card to allow a person to obtain its programs without its authorization.  Walsh possessed the type of DIRECTV access cards that could be modified to allow reception of its signal without authorization and without charge.

7.  DIRECTV has used electronic countermeasures ("ECMs") to disable unauthorized access cards by causing the embedded computer to repeatedly execute the same software command, putting the card in an infinite loop that will not allow decryption of the satellite signal.

8.  A disabled access card, however, may be repaired by use of a device known as an "unlooper."  One such unlooper device is marketed under the name of "Vector UL Pro with SU2 Code Enclosed Unlooper."  This device would repair a disabled access card of the type possessed by Walsh.

9.  On or about March 15, 2001, Walsh purchased a Vector UL Pro with SU2 Code Enclosed Unlooper from Vector Technologies for the sum of $169.

10.  On or about May 25, 2001, DIRECTV, with the assistance of law enforcement officers, executed writs of seizure at a mail shipping facility used by several distributors of pirate access devices, including, among others, Vector Technologies.  Records seized at that time indicated that Mr. Walsh had purchased the Vector UL Pro in March of 2001.

11.  By letter dated September 24, 2001, DIRECTV, through counsel, informed Mr. Walsh that it had evidence indicating that he had "employed an illegally modified access card to gain unauthorized access to DIRECTV satellite programming."  (Plaintiff's Exhibit's ("PX") 2.)  The letter stated:

> DIRECTV is prepared to release all claims against you in return for your agreement to surrender all illegally modified access cards, or other satellite signal theft devices in your possession, custody, or control.  You will also be required to execute a written statement that you will not use illegal devices to obtain satellite programming in the future.  Moreover, DIRECTV requires that you make monetary restitution for your past wrongful conduct and the damages thereby incurred by the company.

12.  Shortly after receipt of the letter of September 24, 2001, Walsh discarded the Vector UL Pro Unlooper in a landfill.  Walsh's DIRECTV subscription was discontinued or suspended on October 2, 2001.

13.  The Vector UL Pro Unlooper purchased by Walsh is primarily designed and marketed for the purpose of circumventing DIRECTV's encryption technology and obtaining access to DIRECTV's satellite programming without payment to DIRECTV.  An examination of the unlooper device purchased by Walsh could have enabled DIRECTV to determine whether it had been used to unloop access cards because the device keeps track of successful repairs of disabled cards.  Walsh's action in discarding the Vector UL Pro precluded DIRECTV from determining whether it had been used.

## II.  **DISCUSSION**

**A. <u>Liability</u>**

DIRECTV seeks recovery under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, the Electronic Communications Privacy Act, 18 U.S.C. § 2511, and the Pennsylvania anti-piracy statute, 18 Pa. Cons. Stat. Ann. § 910.  Thus, the evidence will be assessed against these statutory provisions.

In pertinent part, Section 605(a) of Title 47 U.S.C. provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Any person "aggrieved" by a violation of § 605(a) may bring a civil action for injunctive and monetary relief.  47 U.S.C. § 605(e)(3).  Monetary relief may consist of either actual damages and disgorgement of any profit, or statutory damages for each violation of § 605(a) of not less than $1,000 or more than $10,000, "as the Court considers just . . . ."

Section 2511 of Title 18 U.S.C. makes it unlawful for a person to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any electronic communication.  18 U.S.C. § 2511(1)(a). Section 2520 of Title 18 U.S.C. authorizes an action for injunctive and monetary relief by any person whose electronic communication is intercepted in violation of § 2511.  Under 18 U.S.C. § 2520(c), the court "may assess" as

damages the greater of the actual damages suffered by the plaintiff plus any profits made by the violator, or statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000.

Pennsylvania has comparable statutory provisions that make it unlawful for a person to possess or use "an unlawful telecommunication device," or to modify "a telecommunication device . . . for commission of a theft of telecommunication service or to . . . decrypt . . . or facilitate the . . . decryption or acquisition of any telecommunication service without the consent of the telecommunication service provider." 18 Pa. Cons. Stat. Ann. § 910(a)(1). In addition to criminal penalties, Pennsylvania law authorizes an aggrieved person to recover either the actual damages suffered as a result of a violation of § 910(a) or "statutory damages of between $250 to $10,000 for each unlawful telecommunication device involved in the action, with the amount of the statutory damages to be determined by the court . . . as the court considers just." 18 Pa. Cons. Stat. Ann. § 910(d.1). Telecommunication service is defined to encompass the type of satellite signals at issue here. See 18 Pa. Cons. Stat. Ann. §910(e). The term "unlawful telecommunication device" is defined to include "any telecommunication device which is capable of or has been altered, designed, modified, programmed or reprogrammed, alone or in conjunction with another telecommunication device or devices so as to be capable of facilitating the disruption, acquisition, receipt, transmission or decryption of a telecommunication service without the consent or knowledge of the telecommunication service

provider." 18 Pa. Cons. Stat. Ann. § 910(e).  The definition specifically encompasses "any device, technology, product, service, equipment, computer software or component or part thereof, primarily distributed, sold, designed, assembled, manufactured, modified, programmed, re-programmed or used for the purpose of providing unauthorized disruption of, decryption of, access to or acquisition of any telecommunication service provided by any cable television, satellite, telephone, wireless, microwave or radio distribution system or facility." Id.  The Vector UL Pro bought and possessed by Walsh clearly falls within this definition.

The federal and state statutory provisions cited above have been recognized to encompass the alleged use of the kind of unlooper device at issue here.  See e.g., DIRECTV, Inc. v. Kitzmiller, No. Civ. A. 03-3296, 2004 WL 692230 (E.D. Pa. March 31, 2004); DIRECTV, Inc. .v Frick, No. Civ. A. 03-6045, 2004 WL 438663 (E.D. Pa. March 2, 2004).  Although Pennsylvania law appears to allow recovery for the mere possession of an "unlawful telecommunication device," federal law does not provide a civil action for "merely possessing or purchasing a pirate access device."  DIRECTV, Inc. v. Robson, 2005 WL 1870775, at *4 (5th Cir. August 9, 2005).  Instead, "[t]o prevail on its claims for violations of  § 605(a) and § 2511(1)(a), [DIRECTV] must demonstrate that [Walsh] intercepted or otherwise unlawfully appropriated [DIRECTV's] transmission." Id., 2005 WL 1870775, at *3.

DIRECTV does not have direct evidence that Walsh used the unlooper to obtain its satellite programming without paying for it.  Direct evidence, of course, is not necessarily

10

essential. "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330 (1960).

It has been held that evidence demonstrating mere purchase and possession of an unlooper is insufficient to create an inference of unlawful interception. E.g., Robson, 2005 WL 1870775, at *3. On the other hand, purchase and possession of a pirate access device coupled with evidence that the defendant was a DIRECTV subscriber with a history of suspending and reactivating DIRECTV services has been found to support an inference of unlawful interception. E.g., DIRECTV, Inc. v. Barnes, 302 F. Supp 2d 774, 784-85 (W.D. Mich. 2004). In DIRECTV, Inc. v. Minor, No. Civ. A. 04-50793, 2005 WL 1870779 at *2-4 (5th Cir. August 9, 2005), the Fifth Circuit distinguished its decision in Robson, finding that an inference of unlawful interception may be drawn where the evidence shows that the defendant possessed the equipment necessary to receive the DIRECTV signal, was not a DIRECTV subscriber, and purchased an unlooper. In summary, the case law indicates that a finding of unlawful interception may be premised upon circumstantial evidence that includes not only the possession of a device, the primary purpose of which is to unlawful intercept DIRETV's satellite signal, but also possession of other necessary equipment for interception along with other evidence suggestive of unlawful access to programming. E.g., DIRECTV, Inc. v. Gilliam, 303 F. Supp. 2d 864, 871-72 (W.D. Mich. 2004); DIRECTV, Inc. v. Brower, 303 F. Supp. 2d 856,

11

863 (W.D. Mich. 2004); DIRECTV, Inc. v. Boonstra, 302 F. Supp. 2d 822, 835 (W.D. Mich. 2004).

In this case, Walsh has admitted purchasing the Vector UL Pro with SU2 Code Enclosed Unlooper for the amount of $169. DIRECTV has presented testimony that this device has no commercially significant purpose other than to modify disabled DIRECTV access cards of the type that Walsh possessed. DIRECTV has also presented subscriber history evidence tending to show that Walsh had been accessing DIRECTV services unlawfully and acquired the unlooper to counteract DIRECTV's ECMs. The subscriber history also indicates that Walsh had been a purchaser of pay-per-view programming for a period of time, but not while he possessed the unlooper. The discovery sanction imposed by Judge Caputo leaves unexplained Walsh's purchase of a pirate access device for $169. Finally, the destruction of the device coming after Walsh was advised that DIRECTV had evidence that he was accessing DIRECTV programming illegally, supports an inference that the evidence in question, the unlooper device itself, would have been favorable to DIRECTV.[3] That is, the spoliation of highly

---

[3] Where, as here, a party destroys evidence relevant to the dispute being litigated, the factfinder may infer that "the destroyed evidence would have been unfavorable to the position of the offending party." Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994). "A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." Howell v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996). In this case, DIRECTV"s letter of September 24, 2001 was sufficient to cause a reasonable person to anticipate litigation on the question of unauthorized access to DIRECTV satellite programming. Mr. Walsh's destruction of the evidence prejudiced DIRECTV because it could not confirm actual use of the unlooper. Under these circumstances, an inference adverse to Walsh is warranted.

12

relevant evidence permits an inference that examination of the device would have shown that a disabled DIRECTV access card had been repaired.

Based upon this circumstantial evidence, DIRECTV has established by a preponderance of the evidence that Walsh unlawfully intercepted its decrypted signal in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).  DIRECTV has also shown that Walsh was in possession of an "unlawful telecommunication device," in violation of 18 Pa. Cons. Stat. Ann. §910(a).  DIRECTV, therefore, is entitled to judgment in its favor.

### B.  Damages

In its pretrial memorandum, DIRECTV eschewed an award of actual damages in favor of an award of statutory damages.  (Dkt. Entry 71 at 4.)   In its proposed findings of fact and conclusions of law, DIRECTV requests statutory damages in the amount of $10,000 for each of its statutory claims, or a total award of $30,000.

#### 1. Damages under 47 U.S.C. § 605(e)(3).

As noted above, an aggrieved party may recover statutory damages of not less than $1000 or more than $10,000 for a violation of §605(a) of Title 47 U.S.C.  "The specific amount of statutory damages assessed pursuant to § 605 rests within the sound discretion of the court."  DIRECTV v. Haskell, 344 F. Supp. 2d 761, 763-64 (D. Maine 2004).  As explained in DIRECTV v. Montes, 338 F. Supp. 2d 352, 355 (D. Conn. 2004):

> Courts have used a variety of methods to calculate damages under § 605, including (1) assessing the maximum statutory rate, (2)

>estimating the amount of services the defendant pirated and
>applying a multiplier to that figure, (3) adopting the plaintiff's estimate
>of the amount of services pirated, and (4) where there has been no
>evidence of the plaintiff's actual usage or commercial advantage,
>applying the statutory minimum for each pirated device.

In this case, DIRECTV has not presented evidence sufficient to make a reliable estimate of the amount of services that Walsh pirated. Evidence that the top ten percent (10%) of DIRECTV subscribers expend approximately $2,500 per year does not provide an adequate basis for determining statutory damages in this case as there is no evidence that Walsh was within the top ten percent (10%) of subscribers at any time. Moreover, the unlooper was possessed for only a period of about 6 months. There is no evidence that Walsh used the device to assist others in circumventing DIRECT's ECMs. Under these circumstances, I believe that damages in the minimum statutory amount for the one pirate access device possessed by Walsh is appropriate. See DIRECTV, Inc. v. Neznak, 371 F. Supp. 2d 130, 133-34 (D. Conn. 2005); DIRECTV v. Montes, 338 F. Supp. 2d at 356; DIRECTV, Inc. v. DeCroce, Civil A. No. 03-5199, 2004 WL 1879922, at *3 (D. N.J. Aug. 19, 2004).

### 2. Damages under 18 U.S.C. § 2520(c)(2)

Section 2520(c)(2) provides that "the Court may assess as damages" the greater of actual damages suffered plus the violator's profits, or statutory damages of the greater of $100 per day of violation or $10,000. (Emphasis added.) In DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004), the Eleventh Circuit joined the majority of United States Courts of Appeals

in holding that whether to award liquidated damages under § 2520(c)(2) is a matter committed to the trial judge's discretion.  Accord, Dorris v. Absher, 179 F.3d 420, 429 (6th Cir.1999); Reynolds v. Spears, 93 F.3d 428, 435 (8th Cir. 1996); Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995); Neznak, 371 F. Supp. 2d at 134.  But see Rodgers v. Wood, 910 F.2d 444, 448 (7th Cir. 1990).  The reasoning in Brown is convincing, and will be adopted here.  The issue in this case, therefore, is whether to award no damages, or to award $10,000 since the statute provides for the greater of $100 per day of violation or $10,000, and Plaintiff has not shown the number of days on which its signal was unlawfully intercepted.

In Brown, the Court affirmed the denial of damages under §2820(c)(2) where the evidence showed that a pirate access device had been used for private viewing only; the defendant did not personally profit; DIRECTV was awarded damages under 47 U.S.C. § 605(a) that compensated it for commercial loss in that particular case; and the award of counsel fees compensated DIRECTV for pursuing the litigation in question.  The same factors are present here.  DIRECTV has not shown more than a de minimis violation of the statute.  It has been compensated under section 605(e), and it will be awarded the costs incurred in pursuing this litigation.

### 3. Damages under 18 Pa. Const. Stat. Ann. §910(d.1)

The Pennsylvania anti-piracy statute provides damages based upon the number of unlawful telecommunication devices possessed by the defendant.  See 18 Pa. Cons. Stat. Ann.

§ 910(d.1)(2).  In this case, only one unlawful telecommunication device was possessed by Walsh.  For the reasons set forth above, the minimum amount of statutory damages of $250 will be awarded to DIRECTV for plaintiff's violation of the Pennsylvania statute.

## III. CONCLUSION

For the reasons set forth above, judgment will be entered in favor of DIRECTV and against defendant William Walsh in the amount of $1,250.  In addition, DIRECTV is entitled to counsel fees and costs of this litigation.  Finally, the requested permanent injunctive relief prohibiting Mr. Walsh from unlawfully intercepting DIRECTV's signal will be granted.  An appropriate Order follows.

                                                                              **s/ Thomas I. Vanaskie**
                                                                              Thomas I. Vanaskie, Chief Judge
                                                                              Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DIRECTV, INC.,** | : |
| Plaintiff | : |
| | : 3:03-CV-0072 |
| v. | : |
| | : (Chief Judge Vanaskie) |
| **WILLIAM WALSH,** | : |
| Defendant | : |

## ORDER

**NOW, THIS 16th DAY OF AUGUST, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court is directed to enter judgment in favor of plaintiff and against the defendant, in the amount of $1,250.

2. DIRECTV shall submit its application for counsel fees and costs within the time frame established by applicable rules of court.

3. Defendant William Walsh is permanently enjoined from violating 47 U.S.C. § 605(a), 18 U.S.C. § 2511, and 18 Pa. Const. Stat. Ann. § 910(a).

4. The Clerk of Court is directed to mark this matter closed.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

O:\VANASKIE\Doherty\Opinions\directwalsh2.wpd